WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William Chalmers,<br><br>                    Plaintiff,<br><br>v.<br><br>Intel Corporation, a Delaware corporation,<br><br>                    Defendant. | No. CV-12-00020-PHX-GMS<br><br>**ORDER** |

Pending before this Court is Defendant's Motion for Summary Judgment.[1] (Doc. 53.) For the following reasons the Motion is granted in part and denied in part.

## BACKGROUND

This action is based on allegations that Defendant Intel Corporation failed to accommodate and discriminated against an employee, Plaintiff William Chalmers. Chalmers brings his claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act"). Chalmers filed this action on January 4, 2012 and he concedes that a two-year statute of limitations applies. The basis for the alleged violations is, thus, only the conduct that occurred on or after January 4, 2010.

Chalmers has worked for Intel since January 1994. (Doc. 54 ¶ 5.) In March 2008,

---

[1] The parties' requests for oral argument are denied because the parties have thoroughly discussed the law and the evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Investors Group, Inc. v. Pac. Malibu Dev.*, 933 F.2d 724, 729 (9th Cir.1991).

he was diagnosed with Graves' disease, which exacerbated his other health issues including osteoporosis. (Doc. 59 ¶ 27.) In June 2008, Chalmers moved from Arizona to Oregon in order to accept a new position and it was there that his problems with Intel began. (Doc. 54 ¶¶ 18–23.) In January 2009, Chalmers was briefly hospitalized and he informed his supervisor that his health problems were not under control and that he might have to return to Arizona to continue treatment. (Doc. 59 ¶ 35.) The next month, his supervisor announced a reorganization which resulted in Chalmers reporting to a former peer with whom Chalmers had a poor relationship. (Doc. 54 ¶¶ 29–35.)

In June 2009, Chalmers moved back to Arizona. (*Id.* ¶ 44.) While living in Arizona, he continued to fly to Oregon for work, and the travel caused him pain because of his medical conditions. (*Id.* ¶ 46.) Chalmers communicated these concerns to management in October 2009, and when no response was received, he decided to take vacation time to recover during December. (*Id.* ¶ 42.)

In January 2010, Chalmers returned to work and the events relevant to this case began. Chalmers' position in the Oregon project was re-assigned to another employee, Susan Meredith. (*Id.* ¶ 47.) Although Chalmers was aware of and even sought this change, he felt that he had been promised another supervisory management role which was not given to him. (*Id.* ¶¶ 47–52.) Instead, Chalmers was made an individual contributor, with no supervisory role, who reported to Meredith. (*Id.*)

Chalmers continued to travel, at least occasionally, to Oregon for work and claims that he made requests for an accommodation of less travel, to which he received no adequate response. (*Id.* ¶¶ 65–66; Doc. 59 ¶ 66.) Because he felt he was not being sufficiently accommodated, Chalmers took a medical leave of absence ("MLOA") followed by a sabbatical in order to recuperate. (Doc. 54 ¶¶ 67–70; Doc. 59 ¶¶ 69–70.) This occurred from May through September of 2010. (Doc. 54 ¶¶ 75, 80–81.) Within a week of returning to work, Chalmers broke both of his feet and was not medically released for full duty until October 22, 2010. (*Id.* ¶¶ 81–84.)

/ / /

While Chalmers was recovering from his broken feet, he had a telephone meeting with Meredith about what his job would entail. (*Id.* 85–87.) Meredith was apparently in the middle of reorganizing her group and Chalmers's role was still largely undefined. (*Id.* ¶¶ 86–90.) Chalmers canceled a subsequent meeting with her on October 21 because he had some follow up medical testing to do, and Meredith suggested that he might need to look into whether another MLOA would be required. (*Id.* ¶¶ 91–94.) The next day, Chalmers informed Meredith that he was cleared to return to work but she responded that she was eliminating his position. (*Id.*)

Meredith contacted human resources about placing Chalmers into "redeployment" which apparently meant that he would be removed from his current position and need to find a new position or he would be terminated. (Doc. 54-8 at 6; Doc 59 ¶ 105.) Human Resources informed her that managers usually attempted to help their people find a new position before placing them in redeployment. (Doc. 54-8 at 6.) On January 7, 2011, Meredith gave Chalmers two weeks' notice and around that time also told him to stop working on anything else and focus all his efforts on finding a new position. (Doc. 59 ¶ 107.) Chalmers's attorney stepped in to prevent his redeployment and possible termination and Chalmers was able to find a new position in Arizona in February. (*Id.*) Six months later he found another new position and he is still employed with Intel at this time. (Doc. 54 ¶ 115.) Chalmers alleges that Meredith did not provide adequate assistance in finding a new position and that he had to find the new position on his own under threat of termination. (Doc. 59 ¶¶ 100–07, 126–29.)

**DISCUSSION**

**I.    LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of

[the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250). Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

Furthermore, the party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). If the nonmoving party's opposition fails to specifically cite to materials either in the court's record or not in the record, the court is not required to either search the entire record for evidence establishing a genuine issue of material fact or obtain the missing materials. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028–29 (9th Cir. 2001); *Forsberg v. Pac. N.W. Bell Tel. Co.*, 840 F.2d 1409, 1417–18 (9th Cir. 1988).

/ / /

/ / /

## II. ANALYSIS

Intel asks for summary judgment on the two claims raised by Chalmers. The first cause of action is based on the Rehab Act and the second is based on the ADA. The Rehab Act generally provides that "standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under [the ADA]." 29 U.S.C. § 794(d). Although there are differences in the individual requirements of each act, the parties have not argued that any such differences are material to the current Motion for Summary Judgment.

A cause of action under the Rehab Act or the ADA requires that the plaintiff was (1) disabled, (2) otherwise qualified to perform the job, and (3) subjected to discrimination on the basis of disability. 42 U.S.C. § 12112; *Mustafa v. Clark Cnty. Sch. Dist.*, 157 F.3d 1169, 1174 (9th Cir. 1998) (applying the Rehab Act); *Humphrey v. Mem'l Hospitals Ass'n*, 239 F.3d 1128, 1133 (9th Cir. 2001) (applying the ADA). Intel does not challenge the first two elements of the *prima facia* case in its Motion for Summary Judgment. (Doc. 53 at 11 n.12.) Instead, Intel argues that "Chalmers cannot establish the third element because he suffered no adverse employment action as a result of a disability." (*Id.* at 11.)

Courts often use the term "adverse employment action" as a shorthand in various types of employment claims but the statutory requirement at issue here is that employers may not "discriminate against a qualified individual on the basis of disability" in various aspects of employment. 42 U.S.C. § 12112(a). The construction of the term "discriminate against a qualified individual on the basis of disability" is guided by a non-exclusive list of seven ways in which an employer can violate the ADA, and by extension the Rehab Act. *Id.* § 12112(b). A few of the more relevant examples provided by the statue are: limiting or classifying an employee in a way that adversely affects opportunities or status, § 12112(b)(1); not making reasonable accommodations to the known physical or mental limitations unless it would impose an undue hardship, § 12112(b)(5)(A); and, denying employment opportunities based on the need to make a reasonable accommodation, §

12112(b)(5)(B).

If the plaintiff establishes a *prima facia* case of employment discrimination, then the burden shifts to the employer to justify its actions. "[I]f the employer disclaims any reliance on the employee's disability in having taken the employment action, *McDonnell Douglas* Title VII disparate impact analysis should be used to determine if the employer's reason is pretextual." *Mustafa*, 157 F.3d at 1175. Under the *McDonnell Douglas* framework,

> the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence." Although a plaintiff may rely on circumstantial evidence to show pretext, such evidence must be both specific and substantial.

*Villiarimo,* 281 F.3d at 1062 (citations omitted). Although the employee will ultimately bear that burden at trial, in an employer's motion for summary judgment it is the employer's "initial burden to present evidence negating an essential element of [the employee's] claim or to point to specific portions of the record that demonstrate that [the employee] cannot meet his burden at trial." *Mustafa*, 157 F.3d at 1176.

Intel moves for summary judgment on the grounds that it provided reasonable accommodations, did not discriminate, and would also have prevailed on a retaliation complaint. Chalmers acknowledged that no retaliation claim was made and instead focuses on the issues of accommodation and discrimination. To prevail on this Motion for Summary Judgment, Intel must demonstrate that the facts, taken in the light most favorable to Chalmers, show that there is no genuine dispute about any material fact related to accommodation and discrimination, and that judgment as a matter of law is appropriate.

### A.   Reasonable Accommodation

Chalmers alleges that his travel between Arizona and Oregon caused him pain due to his disability and that Intel did not reasonably accommodate his request for less travel.

1  Although Chalmers alleges a lack of accommodation for all of the time period in which
2  he was traveling from Arizona to work in Oregon, the statute of limitations confines his
3  claims to the two years before the filing of this action. Also, the requested
4  accommodation for less travel became moot after Chalmers began his position in Arizona
5  in February 2011. Therefore, the only time period at issue for accommodation purposes is
6  from January 2010 to February 2011. To the extent that Chalmers seeks to pursue an
7  accommodation claim outside of that timeframe, summary judgment against such claims
8  is granted.

9  Under the ADA, an employer has various obligations. It is required to provide
10 reasonable accommodations to disabled employees "'unless [the employer] can
11 demonstrate that the accommodation would impose an undue hardship on the operation
12 of the business of [the employer].'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089
13 (9th Cir. 2002) (quoting 42 U.S.C. § 12112(b)(5)(A)). "Once an employer becomes
14 aware of the need for accommodation, that employer has a mandatory obligation under
15 the ADA to engage in an interactive process with the employee to identify and implement
16 appropriate reasonable accommodations." *Humphrey*, 239 F.3d at 1137 (citation
17 omitted). An employer, however, need not "provide an employee the accommodation he
18 requests or prefers"; instead, "the employer need only provide some reasonable
19 accommodation," *Zivkovic*, 302 F.3d at 1089, that "enable[s] the employee to perform the
20 duties of the position." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1115 (9th Cir. 2000),
21 *vacated in part on other grounds by*, 535 U.S. 391 (2002).

22 As is stated above, the relevant period for Chalmers claims is January 4, 2010 up
23 to February 2011. Plaintiff was already living in Arizona at this time, but his work
24 project was in Oregon.

25 The parties focus the majority of their attention on the period from January to
26 April 2010 before Chalmers went on leave. Intel claims that it did in fact accommodate
27 Chalmers during this period by allowing him to not travel in any given week for any
28 reason (Doc. 53 at 10:4–6) and that he simply informed his supervisor of this without

requesting permission (Doc. 54 ¶ 66). However, the deposition testimony of his supervisor, Meredith, that Intel cited as the basis for these claims only demonstrates that there was some flexibility in his travel. (Doc. 52-6 at 61:19–62:7; 65:13–18.) It does not clearly establish that Intel made any effort to accommodate Chalmers by reducing the travel expectations it had for him. Meredith repeatedly testified that she did "not recall" or "remember" if Chalmers had ever even asked for an ongoing accommodation of less travel. (*Id.*) Instead, she testified that Chalmers would let her know when he was "unable" to travel. (*Id.*) Chalmers testified in his deposition that he had told Meredith that he needed to travel less as an accommodation. (Doc. 54-3 at 158:7-22.) He further testified that the reason he had to take the MLOA and sabbatical was because Intel had not accommodated his needs for less travel. (*Id.*) From the evidence presented it is possible that Intel was accommodating Chalmers on a week-to-week or as needed basis, but it is also possible that Chalmers made a specific and reasonable request for accommodation that was more extensive than that already provided by Intel, and to which Intel did not agree.

In mid-April, Chalmers informed Intel that he would need to take an MLOA and would like to use his sabbatical in conjuncture with that leave. Intel shows facts that it engaged in the collaborative process required under the ADA and in fact provided Chalmers with the leave he requested. Intel allowed Chalmers to take his MLOA followed by his sabbatical in order to recover. It is uncontested that Intel also allowed Chalmers time to recover from his broken feet shortly after he returned from the MLOA and sabbatical.

Intel argues that allowing Chalmers to take these various leaves should count as an alternate accommodation. ADA regulations concerning reasonable workplace accommodations at 29 C.F.R. § 1630.2(o) have been interpreted by the Equal Employment Opportunity Commission ("EEOC") to include extended leave. *See* 29 C.F.R. Part 1630 App. ("There are any number of other specific accommodations that may be appropriate for particular situations but are not specifically mentioned in [29

C.F.R. § 1630.2(o)] . . . includ[ing] permitting the use of accrued paid leave or providing additional unpaid leave for necessary treatment"); *see also Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1247 (9th Cir. 1999). However, granting leave is not *per se* a reasonable accommodation. *Kranson v. Fed. Express Corp.*, 11-CV-05826-YGR, 2013 WL 5807795 *4 n.5 (N.D. Cal. Oct. 28, 2013).

There remains a material dispute, however, about whether granting this leave was a reasonable accommodation in this case. Chalmers asserts that he was obliged to take MLOA leave and then his sabbatical, only because Intel would not reasonably accommodate his requests for reduced travel to Oregon. In its briefing, Intel does not argue that it was unaware of his requested accommodation of less travel. There remains an issue of fact, however, as to what the requested accommodation, if any, was in terms of a defined level for frequency of travel. Intel has pointed out how little Chalmers actually traveled during this period but has not established beyond dispute that this was sufficient to meet its obligation to accommodate Chalmers.

There is also a material dispute about whether Chalmers can meet his initial burden to show that the accommodation of less travel would more probably than not have resulted in his ability to perform his essential job functions. During the relevant time period Chalmers was an individual contributor with no supervisory role. In fact, his role was still being defined and his supervisor admitted she was still trying to figure out his place in her organization. Chalmers also identified other off-site employees who made limited travel. Intel has not demonstrated that there is no dispute that Chalmers would not have been unable to perform his job with less travel.

Taking this in the light most favorable to Chalmers, he has met his initial burden for purposes of the Motion for Summary Judgment and the question turns to whether Intel met its resulting obligations.

Intel argues that allowing less travel would not have been a reasonable accommodation because it would have been an undue hardship. It also argues that it made several alternative reasonable accommodations. It is not clear that an

accommodation of less travel would have created an undue hardship for Intel. Intel argues that Chalmers has previously conceded that he needed to be in Oregon. Chalmers made the first alleged concession in relation to the supervisory job that he had before the statute of limitations, and it is therefore irrelevant. The second concession was when Chalmers told the leave-of-absence insurer that a MLOA was needed because his job required him to travel and be physically present at work. But he did not say that he always had to be in Oregon, and his manager wrote in an email to the insurer that he would need "periodic face2face collaboration." (Doc. 54 ¶ 75.) The accommodation requested was for less travel and Intel has not shown what level of travel might "impose an undue hardship on the operation of the business." *Zivkovic*, 302 F.3d at 1089. As discussed above, Chalmers's job responsibilities were largely undefined. Taking this in the light most favorable to Chalmers, Intel has not established that it could not have reasonably accommodated less travel before it would have experienced undue hardship and therefore summary judgment on that basis is not appropriate.

Intel argues that even if less travel was a reasonable accommodation, it did not have to provide Chalmers with his preferred accommodation. It argues that it provided various alternate accommodations such as other jobs. But the job starting in January 2010 still required him to travel and the time after he began working in Arizona has already been excluded from consideration. Intel also argues that allowing Chalmers to go on leave was an alternate accommodation. While this may be true, this accommodation did not begin until April, and Chalmers alleges he only asked for leave because Intel refused to give him the extent of reduced travel that he actually needed. Intel makes no attempt to demonstrate that Chalmers in fact never requested an alternate travel arrangement as early as January. Issues of fact remain as to whether a reasonable accommodation would have reduced the amount of travel rather than obliging Chalmers to take his leave and whether obliging Chalmers to take his leave was a reasonable accommodation under the circumstances.

/ / /

Neither side specifically establishes what the travel requirements were for Chalmers after he returned from his leave in October 2010 or whether accommodations were sought or made during this time. Taking the facts in the light most favorable to Chalmers, Intel had previously indicated that no travel accommodations could be made after June. As discussed, for purposes of this motion the Court will assume that Chalmers had communicated to Intel his ongoing need for less travel. Also, Meredith eliminated his position in part because she was going to require all of her leads to be local, which means that she was no longer willing to allow an accommodation of limited travel. (Doc 54-6 at 111:3–11, Ex. 13–14.) Therefore, summary judgment is not appropriate for claims arising from the time period at the end of 2010 through the beginning of 2011.

In summary, there are disputed issues of fact related to accommodation. There is conflicting testimony about whether an accommodation of less travel was requested or granted. In general, it is not clear whether an accommodation of less travel would have allowed Chalmers to perform his job or whether it would have created an undue burden on Intel's operations, and whether the accommodation of leave and sabbatical time was sufficient to meet Intel's statutory obligation. It is the role of a jury to weigh the credibility of Intel's version of events against Chalmers's. Both sides provide evidentiary support for their positions and Intel has not met its burden to demonstrate that the outcome is clear as a matter of law.

### B. Discrimination Because of Disability

In addition to the alleged failure to accommodate, Chalmers also argues that Intel discriminated against him in several other instances. The first instance was by not giving him the supervisory position he anticipated in January of 2010. The second instance was when Meredith eliminated Chalmers's position. Finally, Chalmers argues that both of these decisions, as well as earlier actions by Intel and the general lack of support he received, negatively impacted his opportunities for advancement and promotion.

As discussed above, Intel does not dispute the first two elements of a cause of action under the ADA and Rehab Act. Therefore if Chalmers makes a *prima facia*

showing that he was subjected to discrimination on the basis of disability, the Court must apply the *McDonnell Douglas* burden-shifting framework.

### 1. The January 2010 Position Chalmers Did Not Receive

The first instance alleged here is that Intel did not give Chalmers the supervisory position he anticipated in January 2010. An example of discrimination on the basis of disability is when an employer denies employment opportunities based on the need to make a reasonable accommodation. 25 U.S.C. § 12112(b)(5)(B). The failure to give Chalmers the position could be a discriminatory action if it was done because Intel was unwilling to accommodate Chalmers's request for limited travel.

Having established a *prima facia* case, the burden shifts to Intel to provide a nondiscriminatory basis for its actions. Here, Intel provides the nondiscriminatory reason that it was always considering a local employee who could be on site at all times. Therefore, the burden shifts back to Chalmers to refute that stated reason.

Even taking the facts in the light most favorable to Chalmers, Chalmers has not alleged both specific and substantial evidence that Intel's reason is unworthy of credence or that a discriminatory reason more likely motivated its decision not to give Chalmers that job. Chalmers alleges an antagonistic history with a supervisor who helped make the decision. Even if that supervisor chose not to give Chalmers the position in order to spite or embarrass him, that has nothing to do with Chalmers's disability and is irrelevant to an ADA or Rehab Act cause of action. Meredith was just being announced in her new position over Chalmers and he does not even allege that she was fully aware of his disability at that point, let alone that she made the hiring choice because of his disability. Although Chalmers generally alleges discriminatory animus, he provides no specific or substantial evidence to demonstrate that any such feelings motivated this hiring decision and there is no indication that he will be able to meet that burden at trial. Accordingly, summary judgment is granted as to the claim that Intel discriminated against Chalmers in January 2010 when it did not give him the supervisory position he anticipated.

/ / /

**2. The Elimination of Chalmers's Position in October 2010**

The second instance of alleged discrimination was when Meredith eliminated Chalmers's position in October 2010. Discrimination on the basis of disability can occur when an employer does not make reasonable accommodations, *Id.* at § 12112(b)(5)(A), or denies employment opportunities based on the need to make a reasonable accommodation, § 12112(b)(5)(B). As noted above, Meredith's decision to eliminate Chalmers's position could be interpreted by a reasonable jury as a refusal to make reasonable accommodation.

Discrimination on the basis of disability also includes limiting or classifying an employee in a way that adversely affects opportunities or status because of the disability. *Id.* § 12112(b)(1). For purposes of the ADA, "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." *Humphrey*, 239 F.3d at 1139–40. The actions of Meredith here limited Chalmers in a way that adversely affected his status because she made his position a temporary one. She said this happened because he was neither local nor willing to travel to be on site. His travel restrictions resulted from his disability and are therefore considered part of his disability.

Having established a *prima facia* case, the burden shifts to Intel to provide a nondiscriminatory basis for its actions. Here, Intel provides the nondiscriminatory reason that Meredith was restructuring her organization and wanted to have only local leads. Therefore, the burden shifts back to Chalmers.

Here, Chalmers provides specific and substantial evidence that this was pretext and that Intel's reason is unworthy of credence or that a discriminatory motive was more likely. A jury could determine that Meredith eliminated Chalmers position because she was tired of dealing with his disability. Courts have held that causation can be established when an adverse employment activity is very closely connected in time to a protected activity. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (reviewing past cases that held time periods of one and one-half months to be sufficient to establish causation but three months to be insufficient on its own). Within a month of

returning from the MLOA and sabbatical leave, and during the time that Chalmers was out with broken feet, Meredith, seemed to be frustrated that "he was kind of not working and not on leave." (Doc. 54 ¶ 22.) The day after he canceled a meeting because of medical testing, Meredith informed him that she was eliminating his position.

The elimination off his position occurred within a month of his return from leave and during the time that he was working from home due to an injury caused in part by his disability. This close temporal proximity, combined with her expressed frustration and all the other background facts, meets Chalmers's burden to provide specific and substantial evidence of pretext. Only a jury can weigh the timing of Meredith's actions and her explanations of how and when she came to her decision. Intel does not establish to a legal certainty that Chalmers will be unable to meet his burden to establish pretext at trial.

### 3. Other Claims

The parties also briefed various other actions that took place before the statute of limitations including a management reorganization and a performance review that occurred in 2009. To the extent that those were being presented as claims in this case, they are barred by the statute of limitations and summary judgment is granted. However, a discussion of those background events at trial will not be entirely precluded to the extent that they are relevant to establishing the remaining claims.

Similarly the allegation that Chalmers would have been promoted to a Grade 11 does not present a claim in and of itself, but it may be relevant to damages or for some other purpose. Chalmers does not identify when he should have been promoted to Grade 11 or argue that he was considered but rejected for promotion on the basis of his disability. Instead, he essentially argues that he was not able to be promoted because he did not receive the positions and responsibilities that he should have been given. In other words the lack of promotion to Grade 11 was a consequence of alleged discrimination and failure to accommodate. As such, it is a damage flowing from the other claims and is not alleged to be an independent violation of the ADA or Rehab Act. Therefore, summary judgment is also granted as to any claim that Intel did not promote Chalmers to Grade 11

based on any discriminatory motivation.

### C. Damages

Finally, Intel repeatedly argues that Chalmers suffered no tangible harm as a result of any alleged discrimination or failure to accommodate. It seems to argue that he cannot show discrimination under the acts because he is still employed, was never actually fired or disciplined, and his pay was never cut. However, Intel cites no authority that such compensable damages must be established. The lack of demonstrable economic harm, if proven by Intel at trial, may limit the damages awarded, but there may still be a violation of the statutes. Despite Intel's claim, Chalmers has alleged some damages that may be compensable. In his complaint, Chalmers has asked for reinstatement of the sabbatical time he was forced to use. He may also have lost some pay, sick time, or other benefits during the time he was on his MLOA. As noted above, the lack of promotion to Grade 11 may provide some basis for damages as well.

Intel has not established a complete lack of compensable harm or that an award of compensatory damages is even a requirement under the statutes.

### CONCLUSION

Although summary judgment is appropriate for some time periods related to accommodation and for some discrimination claim; several other claims survive.

In terms of accommodation time periods, summary judgment is granted for claims before the statute of limitations cutoff in January 2010 and after Chalmers began working in Arizona in February 2011. Summary judgment is not granted as to the remaining period of alleged failure to accommodate.

In terms of discrimination claims, summary judgment is granted as to the job position Chalmers did not receive in January 2010. Summary judgment is also granted as to all actions that occurred before the statute of limitations and as to the failure to promote to Grade 11. The surviving discrimination claim is that Intel eliminated Chalmers's position in October 2010 after all of the accommodations he sought and the leave that he took.

1 **IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment
2 (Doc. 53) is **granted in part and denied in part.**
3 Dated this 3rd day of February, 2014.

*A. Murray Snow*

G. Murray Snow
United States District Judge